**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Edmond JACKSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 3, 2008.

Filed Aug. 15, 2008.

Gerald A. Stein, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: ORIE MELVIN, LALLY–GREEN, and SHOGAN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Edmond Jackson, appeals from the judgment of sentence entered on July 21, 2006. We affirm.

¶ 2 The relevant facts and procedural history are summarized as follows. On the evening of October 14, 2004, Detective Ronald Dove, Detective James Waring, Officer Thomas Hood, and Officer Edward Allen were investigating a shooting incident that occurred earlier in the day in the neighborhood of 33rd and Cumberland Streets in Philadelphia. Charles Wesley was the target of that shooting. Detectives Dove and Waring were standing on 33rd Street, speaking to Gene Palmer about the incident. Officers Hood and Allen were sitting in a Ford Taurus parked nearby on the street. Wesley was walking south on 33rd Street, with Sharee Norton and her two children, Sharron Norton and Shanya Wesley.

¶ 3 A group of men, which included Appellant, Kyle Little, Mufusta McCloud, Ronald Alston, and Leroy Fair was walking toward them. The men were armed. As they neared Wesley, they started shooting. The officers exited their vehicle. Officer Allen pushed Palmer to the ground. Officer Hood radioed for assistance from other officers in the area. Detective Waring, Norton, and her children took cover. Detective Dove saw that the gunmen were firing in his direction, and took particular note of Appellant, who was in a white T-shirt. Detective Dove crouched to the ground. In total, between 50 and 80 shots were fired by the gunmen. Detective Dove fired four shots toward the gunmen. No one was injured. Wesley ran north on 33rd Street. The gunmen ran west on Cumberland toward 34th Street. The detectives and the officers pursued the gunmen. When Detective Dove rounded the corner of 33rd and Cumberland, he saw Appellant. Appellant turned, looked over his right shoulder at Detective Dove, and raised his gun toward the detective. In response, Detective Dove fired one shot at Appellant. Ultimately, Appellant and the other gunmen were apprehended.

¶ 4 On October 14, 2004, Appellant was charged with, *inter alia*, two counts of attempted murder, seven counts of aggravated assault, carrying firearms without a license, and criminal conspiracy. 18 Pa. C.S.A. §§ 2502, 2702, 6106, 901, 903.

¶ 5 Appellant waived his right to a jury trial. Appellant's trial began on November 7, 2005.[1] On November 17, 2005, the trial court found Appellant guilty of all charges. On July 21, 2006, the trial court sentenced the trial court sentenced Appellant to 13½ to 27 years incarceration.[2] This appeal followed.[3]

¶ 6 Appellant raises the following issues on appeal:

1. Was the evidence insufficient to support Appellant's conviction of the attempted murder of Detective Dove because Appellant did not raise his arm and fire a shot at the Detective?

2. Was the evidence insufficient to support Appellant's convictions for aggravated assault insofar as the evidence failed to establish that Appellant or his alleged co-actors intended to shoot anyone other than Wesley and the doctrine of transferred intent does not apply.

Appellant's Brief at 4 (edited for brevity).

¶ 7 In his first issue, Appellant claims that the evidence was insufficient to sustain his conviction for the attempted murder of Detective Dove. This Court's standard of review on a claim challenging the sufficiency of the evidence is well-settled:

1. Like Appellant, the other gunmen were charged with, *inter alia*, attempted murder, aggravated assault, carrying firearms without a license, and criminal conspiracy. Appellant was tried jointly with these defendants.

2. Appellant was sentenced to a prison term of seven and one-half to 15 years for attempted murder, three concurrent prison terms of five to 10 years for aggravated assault, five concurrent prison terms of six to 12 years for attempted murder, aggravated assault, and criminal conspiracy, to run consecutively to the prison term for attempted murder, a concurrent prison term of one to five years for carrying firearms without a license, and a concurrent prison term of seven and one-half to 15 years for aggravated assault.

3. On October 19, 2006, the trial court ordered Appellant to file a Pa.R.A.P.1925(b) statement within 14 days. Appellant timely filed his statement on October 31, 2006. The trial court filed a Rule 1925(a) opinion on June 26, 2007.

[We determine] whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. In making this determination, we must evaluate the entire record and consider all the evidence actually received. It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial.

*Commonwealth v. Randall,* 758 A.2d 669, 674 (Pa.Super.2000), appeal denied, 564 Pa. 707, 764 A.2d 1067 (2000) (citations omitted). Moreover, reasonable inferences are predicated on proven facts and circumstances, not on suspicion or surmise. *Commonwealth v. Frey,* 264 Pa.Super. 212, 399 A.2d 742 (1979).

¶ 8 Under the Crimes Code, "[a] person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). "A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'" *Commonwealth v. Dale,* 836 A.2d 150, 152 (Pa.Super.2003) (citation omitted). *See* 18 Pa.C.S.A. §§ 901, 2502. "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Gilliam,* 273 Pa.Super. 586, 417 A.2d 1203, 1205 (1980). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." *Com-*

*monwealth v. Schoff,* 911 A.2d 147, 160 (Pa.Super.2006). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Gease,* 548 Pa. 165, 696 A.2d 130, 133 (1997).

¶ 9 At Appellant's trial, on direct examination, Detective Dove testified as follows:

PROSECUTOR: As the males started to run, what if anything did you do?

DETECTIVE DOVE: Like I said, after I fired four shots, I was kind of crouched down on the ground. They stopped. I got up and chased them south on 33rd, kind of this way, diagonally.

PROSECUTOR: Did you see which way the group ran?

DETECTIVE DOVE: They ran westbound on Cumberland.

PROSECUTOR: When you got to the corner of 33rd and Cumberland, did you turn westbound on Cumberland?

DETECTIVE DOVE: Yes. As I rounded that corner[,] I again observed the male in the white T-shirt. He appeared to still be armed. His arm raised towards me; I fired one more shot.

N.T., 11/15/06, at 76–77. On cross-examination, Detective Dove testified as follows:

DEFENSE COUNSEL: When you got to the corner of 33rd and Cumberland and, I believe that you testified that as soon as you rounded the corner you see one of the individuals who had on a white shirt, who you had been focusing on, raise his gun. Is that right?

DETECTIVE DOVE: He started to raise his hand, yes.

DEFENSE COUNSEL: And am I to understand that the reason you fired the fifth shot from the corner on 33rd and Cumberland is because you saw this male with his gun raised?

DETECTIVE DOVE: He was in the process of raising it, yes.

DEFENSE COUNSEL: Was his back to you?

DETECTIVE DOVE: More of his profile. And he was looking in my direction.

DEFENSE COUNSEL: Was it his left side or his right side?

DETECTIVE DOVE: His right side.

DEFENSE COUNSEL: His right side. He's looking in your direction and he starts to pick up his gun; is that right?

DETECTIVE DOVE: Yes.

DEFENSE COUNSEL: He doesn't have it aimed at you, though, right?

DETECTIVE DOVE: No.

DEFENSE COUNSEL: And he is at the corner of 34th and Cumberland; is that right?

DETECTIVE DOVE: He's getting there; yes, about to round that corner.

DEFENSE COUNSEL: So as he's running[,] he's also starting to get his gun up?

DETECTIVE DOVE: Sure.

DEFENSE COUNSEL: So for your safety, all the way from 33rd and Cumberland you fire a shot at him, right?

DETECTIVE DOVE: Yes, Ma'am.

\* \* \*

DEFENSE COUNSEL: Now, is it a fair statement that when you saw [him] on 34th Street[,] you did not see a gun in his hand, did you?

DETECTIVE DOVE: I did not.

*Id.* at 107–108, 150.

¶ 10 Presently, Appellant argues that the evidence was insufficient because the Commonwealth did not prove that Appellant had a gun or that he aimed or fired it at Detective Dove. Appellant's argument is unavailing.

¶ 11 The evidence establishes that just moments before Detective Dove began to chase Appellant, he was armed with a gun and shooting at Wesley. Further, as Appellant ran from Detective Dove, Appellant turned, looked at the detective, and raised his arm toward the detective. From this, the finder of fact could have reasonably inferred that Appellant had his gun in hand at that time. Moreover, it is not essential that the record show that Appellant took aim and fired the gun at the detective. Under the substantial step test that controls, our focus is on the acts Appellant completed, not on the acts that remained for the actual commission of Detective Dove's murder. Instantly, based on the actions Appellant took, the fact finder could have reasonably found that Appellant took a substantial step toward intentionally killing the detective. *See Commonwealth v. Donton,* 439 Pa.Super. 406, 654 A.2d 580, 585 (1995) (concluding that the evidence established that defendant took a substantial step toward the attempted murder of his wife by loading a gun equipped with a scope, driving miles to where she was, and reconnoitering the area with the gun within easy reach, notwithstanding that defendant did not actually aim or fire the gun at her). Accordingly, we conclude that the evidence was sufficient to support Appellant's conviction for the attempted murder of Detective Dove.

¶ 12 In his second issue, Appellant questions the sufficiency of the evidence to sustain his convictions for the aggravated assaults of Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer. While Appellant admits that he intended to shoot Wesley, Appellant contends that these other persons were simply in the way. Appellant argues that the Commonwealth failed to establish that he

had the specific intent to cause serious bodily injury to any of these persons, and thus, the requisite intent for his aggravated assault convictions is lacking.

¶ 13 Under the Crimes Code, a person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * *

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4). An attempt under § 2702(a), requires a showing of a substantial step toward causing serious bodily injury to another, accompanied by an intent to inflict serious bodily injury. 18 Pa.C.S.A. § 901(a); *Commonwealth v. Matthew,* 589 Pa. 487, 909 A.2d 1254, 1257 (2006). "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. A "[d]eadly weapon" is "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury[.]" 18 Pa.C.S.A. § 2301.

¶ 14 "A person acts intentionally with respect to a material aspect of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). " 'As intent is a subjective frame of mind, it is of necessity difficult of direct proof.' " *Matthew,* 909 A.2d at 1257 (citations omitted). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." *Id.*

¶ 15 In *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978), the Pennsylvania Supreme Court articulated a totality of the circumstances test for determining whether a defendant, who was charged under the attempt provision of the aggravated assault statute, possessed the intent to inflict serous bodily injury. The test the Court provided consisted of a non-exhaustive list of factors to be considered on a case-by-case basis. The list included evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and statements or actions that might indicate his intent to inflict injury. *Id.* at 889. Recently, in *Matthew,* the Supreme Court re-affirmed the totality of the circumstances test announced in *Alexander,* and held that the test should be used to decide whether there is sufficient evidence to convict a defendant charged with aggravated assault for attempting to inflict serious bodily injury upon another. *Matthew,* 909 A.2d at 1259.

¶ 16 In this case, there is no direct evidence of Appellant's intent to cause serious bodily injury to Detective Waring, Officer Hood, Officer Allen, Sharee Norton, her two children, or Gene Palmer. Thus, any evidence of Appellant's intent to do so must be gleaned from the other circumstances surrounding the shots Appellant fired on the evening of October 14, 2004. The evidence shows that these persons were near Wesley, the person Appellant admitted he intended to shoot. The evidence also establishes that these persons were in the line of fire when Appellant started shooting at Wesley.

¶ 17 Relying on *Commonwealth v. Lopez,* 439 Pa.Super. 625, 654 A.2d 1150

(1995), and *Commonwealth v. Mosley*, 401 Pa.Super. 537, 585 A.2d 1057 (1991), *appeal denied*, 529 Pa. 633, 600 A.2d 952 (1991), the Commonwealth contends that this is enough. The Commonwealth argues that in *Lopez* and *Mosley*, this Court held that the act of firing a shot toward another is by itself sufficient evidence to establish the requisite intent for aggravated assault. We disagree.

¶ 18 In *Lopez*, the defendant was charged with, *inter alia*, the aggravated assault of his former girlfriend, Luz Baletin. At the defendant's preliminary hearing, the evidence showed that the defendant went to Ms. Baletin's home and asked that they resume their relationship. When Ms. Baletin declined, the defendant told her that he would kill her if he had a gun; warned her that "today the battle begins," and that "the war [would] continue." *Lopez*, 654 A.2d at 1152. The defendant left, but later returned to Ms. Baletin's residence. Standing outside the home, he shot eight bullets at and through the front door. Since Ms. Baletin was not at home, she was not injured. Upon the defendant's petition, the trial court quashed the aggravated assault charge. The trial court ruled that there was insufficient evidence to show that the defendant intended to inflict serious bodily harm upon Ms. Baletin because she was not inside her home when he fired the bullets at the home's front door.

¶ 19 On appeal, we reversed. We concluded that the absence of Ms. Baletin or any other person from Ms. Baletin's home had no relevance. We reasoned that the defendant's state of mind, not Ms. Baletin's location, was the key to determining whether the defendant committed aggravated assault upon another. *Id.* at 1155. Reviewing the events that transpired before the shooting, we also concluded that the testimony presented at the defendant's preliminary hearing clearly established a *prima facie* case of aggravated assault. We determined that from the surrounding circumstances, a reasonable finder of fact could readily determine that the defendant intended to cause serious bodily injury to Ms. Baletin with a deadly weapon, if the finder of fact concluded that the defendant believed that Ms. Baletin was inside her home when he fired the shots. *Id.*

¶ 20 Thus, it is clear that *Lopez* does not support the Commonwealth's present position. In *Lopez*, the act of firing a weapon at the victim's door was but one circumstance among several that we considered when we determined that the Commonwealth satisfied its burden on the intent element for aggravated assault. Moreover, at the preliminary hearing stage of the proceedings, the Commonwealth was not required to prove the elements of aggravated assault beyond a reasonable doubt. *See Commonwealth v. Jacobs*, 433 Pa.Super. 411, 640 A.2d 1326, 1327–1328 (1994) (explaining that the preliminary hearing is not a trial and that the Commonwealth is only required to establish sufficient probable cause to warrant the belief that the accused committed the offense).

¶ 21 Likewise, the Commonwealth's reliance on *Mosley* is misplaced. In *Mosley*, the defendant was involved in a gunfight in which rival gang members fired at each other. The defendant was convicted in a bench trial of aggravated assault on the opposing gang members. In this Court, the defendant challenged the sufficiency of the evidence to support the convictions. It was not disputed that that the rival gang members were the intended targets of the bullets that the defendant shot. We upheld the defendant's conviction for aggravated assault "because the trial court found that the firing of shots into a crowded area at rival gang members constituted

an attempt to cause serious bodily injury." *Mosley*, 585 A.2d at 1064. Therefore, the *Mosley* case is inapt.

¶ 22 As noted, on the issue of Appellant's intent in the present case, the evidence shows that Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer were near Appellant's intended victim. The evidence also shows that Appellant fired a deadly weapon toward them. There is, however, no other evidence, in the form of circumstances, actions or words, occurring before, during, or after the shooting, that tends to demonstrate that Appellant specifically intended to inflict injury upon these particular persons. Therefore, the only circumstance in the record from which it may be inferred that Appellant had the intent to cause these persons serious bodily injury was his firing a deadly weapon in their direction. Based on the totality of the circumstances, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that Appellant harbored the specific intent to cause serious bodily injury with a deadly weapon to any of these persons.

¶ 23 Nonetheless, the Commonwealth contends that Appellant's convictions for aggravated assault must stand. The Commonwealth argues that even if the evidence is insufficient to establish that Appellant had the specific intent to seriously injure these persons, the intent element is

satisfied under the doctrine of transferred intent.[4] The Commonwealth argues that under the doctrine, Appellant's admitted intent to shoot and cause Wesley serious bodily harm, satisfies the intent element for Appellant's aggravated assault convictions of these persons. Appellant counters that the doctrine of transferred intent does not apply in this case because these persons were not actually injured. It is Appellant's position that the doctrine is not meant to apply and has not been applied to a charge of aggravated assault, when criminal liability is premised on the attempt to cause serious bodily injury to another. *See, e.g., State v. Brady*, 393 Md. 502, 903 A.2d 870 (2006), *cited in Commonwealth v. Bullock*, 590 Pa. 480, 913 A.2d 207, 219 n. 11 (2006), (concluding that the transferred intent doctrine does not apply to crimes of attempt because the defendant has committed a complete crime against the intended victim). Appellant further argues that 18 Pa.C.S.A. § 303(b), enacted to reflect existing law, reveals that the doctrine is to be used only where a defendant shoots a gun at a person, intending to cause serious bodily injury, but **hits** another, or where the defendant shoots the intended victim, but the bullet does not cause serious harm.

* * *

¶ 24 In *Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023 (1999), *cert.*

---

4. The doctrine of transferred intent was codified in 18 Pa.C.S.A. § 303. *Commonwealth v. Devine*, 750 A.2d 899, 904 (Pa.Super.2000), *appeal denied*, 564 Pa. 703, 764 A.2d 1065 (2000). The statute provides in relevant part:

§ 303. Causal relationship between conduct and result

(b) **Divergence between result designed or contemplated and actual result.**—When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b).

*denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000), our Supreme Court considered the doctrine of transferred intent. Based upon the Court's pronouncement in *Thompson* regarding the doctrine, we are compelled to agree with the Commonwealth that the doctrine applies in Appellant's case. In *Thompson,* the evidence established that Francisco Forbes drove to Donovan "George" Aitken's apartment. Forbes was involved in Aitken's marijuana business. When Forbes exited his vehicle, the defendant approached him and asked for a cigarette. Forbes indicated that he did not smoke, crossed the street, and entered Aitken's apartment building. Later, Forbes, Aitken, and Aitken's girlfriend exited the building. As Forbes was crossing the street towards his car, he saw the defendant pull out a handgun and begin firing. Forbes ducked, ran toward the apartment building, and escaped injury. Aitken was shot and fell to the ground. The defendant shot Aitken several more times. Aitken died from the gunshot wounds.

¶ 25 The defendant was charged and convicted of, *inter alia,* first-degree murder as to Aitken and aggravated assault as to Forbes. The Commonwealth's theory on the element of intent for the aggravated assault charge incorporated the doctrine of transferred intent. The trial court found that the doctrine applied and charged the jury accordingly.[5]

¶ 26 On appeal to the Supreme Court, the defendant challenged the sufficiency of the evidence on his conviction for aggravated assault as to Forbes. The defendant also asserted that the trial court erred in instructing the jury on the doctrine. The defendant argued that the instruction was not warranted because Forbes was not an intended victim and because Forbes suffered no harm.

¶ 27 The Supreme Court rejected the defendant's argument, ruling that the doctrine of transferred intent applied in his case. In doing so, the Court made clear that the defendant's intent for the aggravated assault charge as to Forbes could be satisfied by application of the doctrine, even though Aitken, and not Forbes, was the intended victim, and despite the fact that Forbes was not injured. The Court stated:

> [I]n order to sustain the conviction for aggravated assault, the Commonwealth only needed to establish that appellant attempted to cause serious bodily injury.

**5.** In *Thompson,* the trial court instructed the jury as follows:

> There is in the law a doctrine of transferred intent which, similarly stated, is this, if you have a state of mind or an intent to injure an intended victim and instead of injuring the intended victim, remember, the intended victim is not injured, but you actually injure somebody else, the state of mind is that you wanted to kill "A" and you aimed and shot somebody else or if you intended to attempt to inflict serious bodily harm upon "A," the intended victim, but somebody else is the actual victim, the state of mind with respect to the intended victim is that as the state of mind to inflict or attempt to inflict injuries upon the actual victim who is injured or attempted to be injured. So, the intent to harm the intend-

ed victim is to be transferred to the actual victim. That's the doctrine of transferred intent, which can apply in a given set of circumstances. It can be applicable here. *Id.* at 1029. In response to a question from the jury regarding the aggravated assault charge, the trial court also instructed:

> [T]he defendant's conduct disregarded what was intentional, in other words, that it was his conscious objective or purpose to cause serious bodily injury, and under the doctrine of transferred intent, you have to have the intent to kill or to cause serious bodily injury to one person and it was by accident directed to the actual victim other than the intended victim or both victims, you have the doctrine of transferred intent.

*Id.* at n. 15.

There is no requirement that the victim actually be injured. Moreover, appellant's argument that the transferred intent instruction was not warranted because he did not intend to shoot Forbes ignores the essence of the transferred intent doctrine, that is, the person who ultimately is the victim **not be** the original intended victim. "The transferred intent theory provides that if the intent to commit a crime. exists, this intent can be transferred for the purpose of finding the intent element of another crime." The evidence here demonstrated that appellant shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction. Where the evidence is sufficient to support an instruction, a new trial is not warranted. Hence, this claim warrants no relief.

*Id.* at 1029 (citations and footnote omitted) (emphasis in original).

¶ 28 We conclude that *Thompson* controls and teaches that the doctrine of transferred intent applies in Appellant's case. It. is an established fact that Appellant specifically intended to cause serious bodily injury to Wesley with a deadly weapon. Under the doctrine, Appellant's intent in this regard is transferred to Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer. Therefore, the intent element for Appellant's aggravated assault convictions as to these persons was met. Viewing the evidence in the light most favorable to the Commonwealth as. verdict winner, together with all the reasonable inferences to be drawn, we conclude that the evidence was sufficient to sustain Appellant's convictions for aggravated assault.[6]

¶ 29 Judgment of sentence affirmed.

¶ 30 Orie Melvin, J., concurs in the result.

---

**6.** While we are bound by our Supreme Court's ruling in *Thompson*, we respectfully urge the Court to reconsider it. In our view, the doctrine of transferred intent as set forth by the Supreme Court of Maryland in *Brady* is persuasive. It retains the sound and commonly understood notion that the unintended victim must be actually injured before the doctrine of transferred intent may apply. It is also consistent with the language in 18 Pa. C.S.A. § 303(b), and the statute's aim to codify existing law. 1972 Official Comment, 18 Pa.C.S.A. § 303. *See also* Model Penal Code, § 2.03.