J-S67013-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
LAMAR STEWART ALSTON, :
:
Appellant : No. 266 WDA 2014

Appeal from the Judgment of Sentence January 16, 2014,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0010059-2012

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:            **FILED NOVEMBER 25, 2014**

Lamar Stewart Alston ("Alston") appeals from the judgment of sentence entered following his convictions of first-degree murder, attempted homicide, aggravated assault, flight to avoid apprehension, recklessly endangering another person, and tampering with evidence.[1]  Alston challenges only his conviction of attempted murder.  We affirm.

The trial court summarized the facts underlying Alston's convictions as follows:

> On June 24, 2012, Jonathan Tillar drove down Stratmore Street in the West End of Pittsburgh. Tillar was driving his friend Mileek Grissom's car and Grissom was driving Tillar's car, because they traded cars that day. Tillar testified that he was trying to kill time that morning while he waited for Grissom to finish his appointment at a nail spa in Bridgeville.  He stopped by his friend Nate Watt's [*sic*] house in the

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901, 2702, 5126, 2705, 4910.

*Former Justice specially assigned to the Superior Court.

West End. Tillar saw Rico Alston on the porch of the house. 'Rico' was the nickname of [Alston's] half[-]brother, Darrell Alston. … A man and woman who Tillar identified as [Alston] and Hope Renee Barfield were also on the porch of the house.

When Tillar walked up the steps, [Alston], Rico and Hope told him Nate wasn't there. Tillar asked to talk to Rico about the accusations he had been making against him. [Alston] and Hope Barfield walked away during the ensuing conversation. Tillar and Rico argued. At some point, [Alston] and Hope Barfield returned. Barfield walked up behind Tillar and put him in a bear hug, although Tillar was able to break free. … Tillar punched [Alston], who pulled a gun on him. Tillar believed that he was being confronted for his role in the raid of Rico's house. … .

While [Alston] held Tillar at gunpoint, Barfield opened the door of the car, and took the car keys, some money and some marijuana that Tillar had in the car. Barfield tossed the keys to a friend of Tillar's who was waiting in the car and said, 'it's got nothing to do with you.' Tillar pretended to call 911 to report the incident. Once Tillar pretended to make the call, [Alston] and Barfield walked away.

Tillar became concerned that it wasn't safe at his house. He believed that [Alston] and Barfield knew where he lived. Tillar and his friend drove to Tillar's house where Tillar told the mother of his children[] to get the children and herself ready and leave the house. At that point, Nate Watts drove up to Tillar's house and began yelling at him, telling him not to go back to [Nate's] house where he lived with his grandmother.

After Nate Watts left, [Alston's] brother Rico pulled up. He tried to tell Tillar that he had nothing to do with the confrontation involving Tillar, [Alston] and Barfield earlier that day. Tillar and Rico then got into a fist fight [*sic*] which was broken up by Mileek Grissom. Tillar testified that he had called Grissom

after leaving Nate's house to tell him that he had just been robbed. As Grissom was trying to stop the fight, [Alston] and Barfield drove up and got out of their vehicle.

Robert Provident, a City of Pittsburgh Homicide investigator, interviewed Co-Defendant, Hope Barfield on July 15, 2012. At the [t]rial, [h]omicide investigator[] Robert Provident testified regarding Co-Defendant Barfield's interview. Barfield stated that Rico Alston had called her and said that he was fighting with Tillar. Tillar testified that he heard Barfield shouting 'shoot him', 'get him', 'shoot them', 'take care of it', and/or 'go handle that'. Tillar asserted that Barfield was ordering [Alston] to go after Tillar and Mileek, or whoever was there. [Alston] began shooting. Barfield later told Police that [Alston] 'was the one firing a gun'. Tillar testified that [Alston] pointed the gun at him before Tillar ducked behind a wall. Tillar testified he then saw [Alston] aiming and firing at Grissom. Tillar testified that Grissom had been standing right behind him before the shooting began.

Tillar managed to evade getting shot. However, he heard Grissom say 'I'm hit'. He tried to get Grissom into his car but he could not. The [p]olice and ambulances arrived shortly thereafter and Grissom was transported to the hospital. Grissom was pronounced dead at the hospital.

Trial Court Opinion, 7/15/14, at 3-5 (citation to notes of testimony omitted).

Alston was tried jointly with Hope Barfield ("Barfield"). At the conclusion of a three-day bench trial, Alston was convicted of the offenses listed above. He subsequently received a sentence of life without parole on the first-degree murder conviction as well as a consecutive sentence of ten

to 20 years of imprisonment on the attempted homicide conviction. No further penalties were imposed on the remaining convictions.

This timely appeal followed. Alston presents one issue for our review:

> Did the trial court err in denying [Alston's] motion for judgment of acquittal regarding count 2, attempted homicide of Jonathan Tillar, since there was insufficient evidence to prove, beyond a reasonable doubt, that [Alston] was shooting at Tillar, and the Commonwealth's evidence indicated that [Alston] was shooting in the direction of and at Mileek Grissom, who was two houses away from where Tillar was positioned during the shooting?

Appellant's Brief at 3.

Our standard of review when presented with a challenge to the sufficiency of the evidence is as follows:

> We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.
>
> Our Supreme Court has instructed: The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of

witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Orie***, 88 A.3d 983, 1013-14 (Pa. Super. 2014), *appeal denied*, 2014 WL 4667501 (Pa. Sept. 17, 2014).

"For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused[,] with a specific intent to kill[,] took a substantial step towards that goal." ***Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa. Super. 2005).

> The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The *mens rea* required for … specific intent to kill[] may be established solely from circumstantial evidence. The law permits the fact finder to infer that one intends the natural and probable consequences of his acts.

***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008) (internal citations omitted).

Alston argues that the evidence was insufficient to support his conviction because there was no evidence he intended to shoot Tillar. In support of his claim, Alston points to Tillar's alleged testimony from the preliminary hearing to the effect that at the time of the shooting, Alston was not aiming at him. Appellant's Brief at 25.

First, we note that the notes of testimony from the preliminary hearing have not been included in the certified record on appeal, and therefore we may not consider the contents thereof. *See Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008) ("For purposes of appellate review, what is not of record does not exist.").

Second, our review of the evidence, in the light most favorable to the Commonwealth, reveals support for the conclusion that Alston intended to kill Tillar and took a substantial step toward accomplishing that goal. Tillar testified at trial that earlier in the day, Alston held a gun on him while Barfield robbed him. N.T., 10/16/13, at 76-78. He further testified that when Alston and Barfield arrived at his house, Barfield yelled at Alston to shoot Tillar and Alston pointed the gun at him before Tillar ducked for cover behind a wall. *Id.* at 88, 140. Tillar then watched as Alston shot Grissom, who had been standing right behind Tillar, multiple times. *Id.* at 88. This evidence establishes both Alston's intent to kill Tillar and a substantial step toward that end; specifically, the pointing of the loaded firearm at Tillar. It matters not that Alston did not fire the gun at Tillar, as we focus on the acts the defendant has done, not the acts remaining to be done before the actual commission of the crime. *Jackson*, 955 A.2d at 444.

We note that a substantial portion of Alston's argument points out inconsistencies and variances in Tillar's testimony and highlights testimony from other witnesses that he believes undercuts Tillar's credibility. *See*

Appellant's Brief at 21-22, 24. These arguments are addressed to the weight, rather than the sufficiency, of the evidence. *See Commonwealth v. Gaskins*, 692 A.2d 224 (Pa. Super. 1997) (holding that a challenge to the credibility of witness testimony goes to the weight of the evidence rather than the sufficiency of the evidence). They have no bearing on the issue before us for review.

Judgment of sentence affirmed.

Mundy, J. joins the Memorandum.

Fitzgerald, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014