J. S09004/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MARKO L. GORE, | : | No. 1812 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, October 30, 2013,
in the Court of Common Pleas of Cambria County
Criminal Division at No. CP-11-CR-0001069-2009

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 25, 2015**

Marko L. Gore appeals, ***pro se***, from the order of October 30, 2013,

denying his PCRA[1] petition.  We affirm.

The facts of this case were summarized by this court on direct appeal

as follows:

> The record reflects that there was a
> long-standing disagreement between Gore and
> Cirilito Cheatam ("Cheatam").  On April 4, 2009, a
> green Chevy Blazer full of Cheatam's friends –
> Denise Burt ("Burt"), Shy-Kwoiila Williams
> ("Williams"), Cierra Clinton ("Clinton"),
> Sharon McCall ("McCall"), and R.L., Burt's minor
> goddaughter – drove into a Sheetz parking lot and
> observed Gore waive [sic] his hand at Cheatam as if
> he had a gun.  The women did not stop, and instead
> continued towards Oakhurst, where they were to
> drop R.L. off at a party.  While on the way to
> Oakhurst, a car driven by Gore's friend stopped in

---

[1] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

front of the Blazer. Gore, driving a white Ford Expedition, pulled alongside of the Blazer in the opposite lane, pulled out a gun, aimed it at Burt, and told her "he didn't want to do it but he had no choice." N.T., 7/8/10, at 95.

Burt saw that the car in front of her left room for her to get away, and she drove off down the street. Gore fired a shot and shattered the Blazer's rear windshield. Burt saw that Gore was coming after her so she stopped, pushed her goddaughter out of the car, got out and started running into the woods, terrified.

McCall jumped into the driver's seat and tried to get away from Gore, who was following the Blazer. More shots were fired at the Blazer. McCall ultimately crashed the Blazer into a garage, and the remaining occupants of the vehicle ran out of the car in different directions. No one was injured.

Gore's girlfriend at that time, Constance McCausland ("McCausland"), responded to Gore's call and picked him up at a nearby gas station. They went to a bar, then to an afterhours club, and around 5:00 a.m. decided to drive to Pittsburgh. According to McCausland, this was not unusual, as they had gone to Pittsburgh several times during the month they had been dating. They stayed in a hotel overnight, and on Sunday, McCausland returned to Johnstown without Gore.

In the weeks that followed, police came to McCausland's house looking for Gore. Gore came to her home approximately a month later, but McCausland told him to leave, as detectives were looking for him and she did not want to be involved. Although she did not specifically tell him there was a warrant out of [sic] his arrest, McCausland stated that Gore knew he was wanted by police.

A United States Marshal apprehended Gore in Pittsburgh on June 25, 2009. He was transported back to Johnstown for trial. A jury convicted Gore of

one count of firearms not to be carried without a license, five counts of aggravated assault, and five counts of recklessly endangering another person.[Footnote 1] He was acquitted of five counts of attempted murder.[Footnote 2] The trial court adjudged him guilty of driving while operating privileges were suspended or revoked.[Footnote 3] The trial court sentenced him to an aggregate term of 19 to 44 years of imprisonment, broken down as follows: an eight to 16 year sentence for aggravated assault on Burt, a consecutive eight to 16 year sentence for aggravated assault on R.L., three consecutive one to four year sentences for aggravated assaults on Clinton, McCall, and Williams, a concurrent sentence of 42 to 84 months of imprisonment for carrying a firearm without a license, and a concurrent 90 day term of imprisonment for driving under suspension.

[Footnote 1] 18 Pa.C.S.A. §§ 6106(a)(1), 2702(a)(1), 2705.

[Footnote 2] 18 Pa.C.S.A. §§ 901(a), 2502.

[Footnote 3] 75 Pa.C.S.A. § 1543(a).

*Commonwealth v. Gore*, 38 A.3d 916 (Pa.Super. 2011), unpublished memorandum at 1-3, *appeal denied*, 48 A.3d 1247 (Pa. 2012). On November 9, 2011, this court affirmed the judgment of sentence, and on July 18, 2012, the Pennsylvania Supreme Court denied allowance of appeal. *Id.*

On April 30, 2013, appellant filed a timely *pro se* PCRA petition, and counsel was appointed. An amended petition was filed on appellant's behalf, and a hearing was held on September 5, 2013. On October 30, 2013, the PCRA court filed an opinion and order denying appellant's petition. A timely

notice of appeal was filed on November 13, 2013. Following a hearing, appellant was permitted to proceed *pro se* on the instant appeal, with stand-by counsel. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the PCRA court filed an opinion on January 17, 2014, relying on its previous opinion and order of October 30, 2013.

Appellant has raised the following issues for our review:

I.    Whether the appellant's rights under the Pennsylvania and United States constitutions were violated with respects [sic] to the trial court's transferred intent jury instruction of which [sic] invaded the jury's province, created impermissible mandatory presumptions, shifted the burden of proof, negated the right to proof beyond a reasonable doubt, impaired the presumptions of innocence, and subjected appellant to double jeopardy, *inter alia*? And whether trial/appellate counsel and/or PCRA counsel were constitutionally ineffective for failing to raise and/or preserve this issue(s)?

II.   Whether appellant was sentenced illegally in violation of the Pennsylvania and United States constitutions in that the sentencing court not only invaded the jury's province, but also erred and abuse [sic] its discretion in by [sic] failing to merge such sentence(s), and further in its enhancement and sentencing of appellant outside the sentencing guidelines, *inter alia*? And whether sentencing/appellate counsel were constitutionally ineffective for failing to raise and/or preserve this issue(s)?

III.  Whether the appellant's rights under the Pennsylvania and United States constitutions were violated with respects [sic] to the verdict being against the weight of the evidence as to [the] Commonwealth's failure to establish proof beyond a reasonable doubt on the

aggravated assault charges? And whether trial/appellate counsel were constitutionally ineffective for failing to raise and/or preserve this issue?

Appellant's brief at 4 (capitalization omitted).

Initially, we recite our standard of review:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Halley***, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa.Super.2001).

***Commonwealth v. Turetsky***, 925 A.2d 876, 879 (Pa.Super. 2007),

***appeal denied***, 940 A.2d 365 (Pa. 2007).

> "To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." ***Commonwealth v. Wallace***, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing ***Commonwealth v. Howard***, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a "'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Commonwealth v. Kimball***, 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting ***Strickland v. Washington***, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "'[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" ***Id.*** at 309, 724 A.2d at

331, quoting **Strickland**, 466 U.S. at 694, 104 S.Ct. 2052.

**Commonwealth v. Jones**, 811 A.2d 1057, 1060 (Pa.Super. 2002), **appeal denied**, 832 A.2d 435 (Pa. 2003). "We presume counsel is effective and place upon Appellant the burden of proving otherwise. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004) (citations omitted).

First, appellant argues that the trial court erred by giving the jury a transferred intent instruction on aggravated assault. Appellant argues that the instruction was inappropriate where his intended victim was Denise Burt and no one was injured. This issue was preserved at trial; however, appellant contends that counsel was ineffective for failing to raise it on direct appeal.

The trial court instructed the jury as follows:

> As I said, as with the attempt to commit murder, you can infer or transfer intent. You can infer one's intent, the natural and the probable consequences of his acts. Thus in case if [sic] you find beyond a reasonable doubt that the defendant intended to and attempted to cause serious bodily injury to Denise Burt, but that his acts effected [sic] or put at risk the other four occupants of the vehicle as well, put them at the same risk of which he placed Denise Burt, and that the acts that he took and the other steps that he took, constituted a substantial step toward the commission of the infliction of serious bodily injury, then you may find the defendant guilty of aggravated assault, and as to the other four victims as well.

Notes of testimony, 7/9/10 at 143.

In **Commonwealth v. Jackson**, 955 A.2d 441 (Pa.Super. 2008), **appeal denied**, 967 A.2d 958 (Pa. 2009), the target of the shooting was Charles Wesley ("Wesley"), but others, including several police officers, were in the line of fire. As in this case, the appellant argued that he only intended to shoot Wesley and there was no evidence he intended to inflict injury upon the other individuals. The appellant argued that the doctrine of transferred intent did not apply where no one was actually injured. **Id.** at 448. The Commonwealth countered that the appellant's admitted intent to shoot and cause Wesley serious bodily harm satisfied the intent element for his aggravated assault convictions of the other persons. **Id.**

Relying on **Commonwealth v. Thompson**, 739 A.2d 1023 (Pa. 1999), **cert. denied**, 531 U.S. 829 (2000), this court agreed. In **Thompson**, the defendant shot and killed the intended victim, Donovan "George" Aitken ("Aitken"). **Jackson**, 955 A.2d at 449. However, Francisco Forbes ("Forbes") was also in the immediate area at the time of the shooting and had to duck and run to escape injury. **Id.** The defendant was found guilty of first-degree murder as to Aitken and aggravated assault as to Forbes. **Id.** Despite the fact that Forbes was not an intended victim and suffered no harm, our supreme court held that the defendant's intent for the aggravated assault charge as to Forbes could be satisfied by application of the transferred intent doctrine:

> [I]n order to sustain the conviction for aggravated assault, the Commonwealth only needed to establish that appellant attempted to cause serious bodily injury. There is no requirement that the victim actually be injured. Moreover, appellant's argument that the transferred intent instruction was not warranted because he did not intend to shoot Forbes ignores the essence of the transferred intent doctrine, that is, the person who ultimately is the victim **not be** the original intended victim. "The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." The evidence here demonstrated that appellant shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction.

*Id.* at 449-450, quoting **Thompson**, 739 A.2d at 1029 (citations and footnote omitted) (emphasis in original).

Following **Thompson**, the **Jackson** court reluctantly concluded[2] that the doctrine of transferred intent also applied in that case:

> It is an established fact that Appellant specifically intended to cause serious bodily injury to Wesley with a deadly weapon. Under the doctrine, Appellant's intent in this regard is transferred to Detective Waring, Officer Hood, Officer Allen, Sharee Norton, Sharron Norton, Shanya Wesley, and Gene Palmer. Therefore, the intent element for Appellant's aggravated assault convictions as to these persons was met.

---

[2] The court in **Jackson** urged our supreme court to revisit **Thompson**, opining that the better rule, as set forth by the Supreme Court of Maryland in **State v. Brady**, 903 A.2d 870 (Md. 2006), is that the unintended victim must be actually injured for the transferred intent doctrine to apply. *Id.* at 450 n.6.

*Id.* at 450.

This court is bound by **Thompson** and **Jackson**. Even if appellant only intended to inflict injury upon Burt, he could be found guilty of aggravated assault as to the other persons in the car as well, under the transferred intent doctrine. Therefore, the trial court did not err in instructing the jury on transferred intent, and counsel had no basis for raising the issue on appeal. Counsel cannot be deemed ineffective for failing to raise a baseless or meritless claim. **Poplawski**, **supra**.[3]

Next, appellant raises two legality of sentencing claims. First, he argues that his sentences should have merged where there was only one victim, Denise Burt. According to appellant, he could not be convicted of multiple counts of aggravated assault where he only intended to shoot Burt. Appellant also argues that he committed a solitary criminal act by firing inside the vehicle.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." **Commonwealth v. Snyder**, 870 A.2d 336, 349 (Pa.Super.

---

[3] To the extent appellant also argues the trial court erred in issuing the instruction regarding criminal attempt to commit murder, we note that appellant was found not guilty of those charges. Similarly, appellant argues that the trial court's instruction contained a mandatory presumption on the element of intent. (Appellant's brief at 18-19.) Again, however, this only pertains to the attempted murder instruction, not aggravated assault. In addition, the issue regarding the mandatory presumption language was never raised in the PCRA court; as such, it is waived. Pa.R.A.P. 302(a).

2005), quoting **Commonwealth v. Duffy**, 832 A.2d 1132, 1137 (Pa.Super.

2003), **appeal denied**, 845 A.2d 816 (Pa. 2004).

> Our Courts have long held that where a defendant commits multiple distinct criminal acts, concepts of merger do not apply. **Commonwealth v. Anderson**, 538 Pa. 574, 650 A.2d 20 (1994); [**Commonwealth v. Johnson**, 874 A.2d 66, 70 (Pa.Super. 2005), **appeal denied**, 587 Pa. 720, 899 A.2d 1122 (2006)]; **see also** 42 Pa.C.S.A. § 9765 ("no crimes shall merge for sentencing purposes unless the crimes **arise from a single criminal act** and all of the statutory elements of one offense are included in the statutory elements of the other offense.")

**Commonwealth v. Robinson**, 931 A.2d 15, 24 (Pa.Super. 2007)

(**en banc**) (emphasis in original).

Appellant argues that he fired a single shot inside the vehicle, intending to strike Burt. (Appellant's brief at 35.) Appellant claims that no one actually saw him fire additional shots into the vehicle. However, appellant mischaracterizes the record and misconstrues our standard of review. Viewing the testimony in the light most favorable to the verdict winner, the Commonwealth, there was ample evidence that appellant fired multiple shots at the vehicle before it finally crashed into a garage. (Trial court opinion, 10/30/13 at 4.) Therefore, appellant did not commit a single criminal act as he contends on appeal.

In addition, as stated above, under the doctrine of transferred intent, appellant could be found guilty of five separate counts of aggravated assault for five individual victims. The Crimes Code defines aggravated assault, in

relevant part, as follows: "**(a) Offense defined.**--A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury <u>to another</u>, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1) (emphasis added). As Section 2702 is written with regard to an attempt to cause serious bodily injury to an individual person, a separate offense is committed for each such attempt. The legislature has authorized multiple sentences for multiple victims, even arising from a single criminal act or episode. Therefore, the trial court did not err in imposing multiple sentences for each of the five victims. ***Commonwealth v. Garcia-Rivera***, 983 A.2d 777 (Pa.Super. 2009) (trial court did not err in imposing multiple, consecutive sentences for involuntary manslaughter, 18 Pa.C.S.A. § 2504, for each of the two victims killed in a single automobile accident).

Appellant also claims that his sentence violates ***Alleyne v. United States***, 133 S.Ct. 2151 (U.S. 2013), in that the trial court imposed an aggravated range sentence based on factors not submitted to the jury, including that his actions put at risk innocent people living in the area of the city where the incident occurred. The trial court observed at sentencing that bullets passed through the home of at least one resident, and that Burt's vehicle eventually ran off the road and crashed into a garage. (Notes of

testimony, 11/9/10 at 8.) According to appellant, this judicial fact-finding violated **Alleyne** and resulted in an illegal sentence.

> According to the **Alleyne** Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The **Alleyne** decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard.

**Commonwealth v. Thompson**, 93 A.3d 478, 493-494 (Pa.Super. 2014), quoting **Commonwealth v. Watley**, 81 A.3d 108, 117 (Pa.Super. 2013) (footnote omitted).

Appellant was not sentenced to a mandatory minimum sentence. Rather, the trial court exercised its sentencing discretion to impose an aggravated range sentence, still well within the statutory maximum, based on certain sentencing factors including the outrageousness of appellant's conduct. This did not violate **Alleyne** or the **Apprendi** line of cases. As Mr. Justice Thomas explained in **Alleyne**,

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. **See**, **e.g.**, **Dillon v. United States**, 560 U.S. ___,

___, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); [***Apprendi v. New Jersey***, 530 U.S. 466, 481 (2000)] ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute").[Footnote 6]

[Footnote 6] ***See also United States v. Tucker***, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (judges may exercise sentencing discretion through "an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"); ***Williams v. New York***, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law").

***Alleyne***, 133 S.Ct. at 2163. Therefore, appellant's sentence was not in violation of ***Alleyne*** and was not illegal.

Finally, appellant claims that trial and appellate counsel were ineffective for failing to litigate a weight of the evidence claim. (Appellant's brief at 36-37.) Appellant offers no meaningful analysis or citation to

pertinent legal authority in support of a weight claim. (**Id.**) Appellant does not explain why the issue would have resulted in a new trial either at the trial level or on direct appeal. As such, the issue is waived. **See Commonwealth v. Murchinson**, 899 A.2d 1159, 1162 (Pa.Super. 2006) (applying Pa.R.A.P. 2119(a) to find waiver where the appellant failed to develop meaningful argument with specific reference to the record in support of his claims) (citations omitted); **Commonwealth v. Hakala**, 900 A.2d 404, 407 (Pa.Super. 2006), **appeal denied**, 909 A.2d 1288 (Pa. 2006) (finding waiver where the appellant failed to offer either analysis or case citation in support of his request for relief, admonishing that "[i]t is not this Court's function or duty to become an advocate for the appellants"), quoting **Commonwealth v. Birdseye**, 637 A.2d 1036, 1043 (Pa.Super. 1994). It is well established that **pro se** status confers no special benefit and "a **pro se** litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court." **Commonwealth v. Lyons**, 833 A.2d 245, 251-252 (Pa.Super. 2003), **appeal denied**, 879 A.2d 782 (Pa. 2005) (citation omitted). To the extent appellant sets forth any argument whatsoever, it seems he harkens back to his argument regarding lack of specific intent to harm anyone other than Burt, which we have already addressed **supra**.

Order affirmed.

Judgment Entered.

- 14 -

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/2015