J-S15003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ISSA BENOIT, | |
| Appellant | No. 692 EDA 2015 |

Appeal from the Judgment of Sentence Entered January 16, 2009
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012147-2007

BEFORE:  BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 29, 2016**

Appellant, Issa Benoit, appeals *nunc pro tunc* from the judgment of sentence of an aggregate term of 17 to 34 years' incarceration, followed by 3 years' probation, imposed after he was convicted by a jury of attempted murder and related offenses.  Appellant challenges the sufficiency of the evidence to support his attempted murder conviction, as well as the discretionary aspects of his sentence.  Additionally, Appellant argues that pursuant to our Supreme Court's recent decision in **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), he is entitled to a hearing for the trial court to determine the admissibility of expert testimony regarding eyewitness identifications.  After careful review, we affirm Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

judgment of sentence in part, and remand for a hearing in accordance with

***Walker***.

The trial court set forth the facts of this case, as follows:

On February 27, 2007, Philadelphia police officers (Officer Sean Devlin and Officer Joseph Domico) set up undercover surveillance to monitor illegal narcotics sales at 151 West Apsley Street. Their main objective was to investigate [] [A]ppellant, who was suspected of selling narcotics from this address. Both plain clothes officers were part of the Narcotics Strike Force at the time and monitored the location from an unmarked blue Dodge Caravan minivan. The minivan was across the street from 151 West Apsley Street. There were three rows of seats in the van, and the second row passenger side seat had been removed to make room for an officer to hide on the floor[.] Devlin hid in the van in this area directly behind the front passenger seat. Domico hid in the back of the van[.]

The officers observed [] [A]ppellant engage in two drug sales. They watched as several unidentified people handed [] [A]ppellant money. After receiving the money, [] [A]ppellant went inside of 151 West Apsley Street, exited several minutes later, and gave the unidentified people small objects. Based on these observations, Devlin contacted the backup officers and gave them a description of [] [A]ppellant. The police did not arrest these individuals.

Shortly after [] [A]ppellant interacted with the individuals, [] [A]ppellant walked across the street and approached the minivan. [] [A]ppellant looked into the driver's side front window and said, "I see you hiding in there pussy. Oh, you want to bang?" Devlin saw [] [A]ppellant pull a gun from his pants, aim the gun at Devlin and fire it. Devlin pulled out his weapon and returned fire. [] [A]ppellant then ran from the crime scene towards 151 West Apsley Street. Officer McCabe found the gun in a yard behind 135 Apsley Street. On February 28, 2007, Domico identified [] [A]ppellant in a photo array. On June 21, 2007, Delvin identified [] [A]ppellant in an in person lineup.

Trial Court Opinion (TCO), 7/10/15, at 4-5 (footnote and internal citations to the record omitted).

Appellant was arrested and proceeded to a jury trial in October of 2008. At the close thereof, he was convicted of attempted murder, aggravated assault, possession of a firearm by a person prohibited, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possessing an instrument of crime (PIC). On January 16, 2008, Appellant was sentenced to an aggregate term of 17 to 34 years' incarceration, followed by 3 years' probation. Appellant filed a timely post-sentence motion, which was denied.

Appellant then filed a timely notice of appeal with this Court, but thereafter, his counsel failed to file a brief on his behalf. Consequently, we dismissed Appellant's appeal. Appellant later filed a timely, *pro se* petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the restoration of his direct appeal rights. The PCRA court granted that petition and reinstated Appellant's direct appeal rights on February 18, 2015.

Appellant filed the present appeal on March 3, 2015. He thereafter timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement, raising a plethora of issues. *See* TCO at 2-3 (setting forth the twelve issues Appellant presented in his Rule 1925(b) statement). Herein, however, Appellant presents only the following three issues for our review:

> I. Was the evidence insufficient to convict [A]ppellant of attempted murder when the Commonwealth did not establish beyond a reasonable doubt the *mens rea* for the offense?

- 3 -

II. Did the trial court err in precluding trial defense counsel from arguing the specific and inherent weaknesses of cross-racial identification to the jury and from precluding the defense from presenting an expert witness in regard to cross-racial identification, or holding a hearing to determine if this evidence was admissible where the eye-witnesses were white and [Appellant is] an African America[n]?

III. Is [A]ppellant entitled to a new sentenc[ing] hearing when the trial court imposed a sentence which was outside the sentenc[ing] guidelines and the record indicates that the trial court was partial toward the victim/complainant?

Appellant's Brief at 2.

Initially, Appellant challenges the sufficiency of the evidence to support his attempted murder conviction.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

In *Commonwealth v. Jackson*, 955 A.2d 441 (Pa. Super), a case addressing the sufficiency of the evidence to prove attempted murder, this Court stated:

> Under the Crimes Code, "[a] person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). "A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to

- 4 -

commit such an act.'" ***Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa. Super. 2003) (citation omitted). ***See*** 18 Pa.C.S.A. §§ 901, 2502. "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." ***Commonwealth v. Gilliam***, 273 Pa. Super. 586, 417 A.2d 1203, 1205 (1980). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." ***Commonwealth v. Schoff***, 911 A.2d 147, 160 (Pa. Super. 2006). "[T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts [.]" ***Commonwealth v. Gease***, 548 Pa. 165, 696 A.2d 130, 133 (1997).

***Jackson***, 955 A.2d at 444.

Here, Appellant was convicted of the attempted murder of Officer Devlin. He maintains that the evidence was insufficient to support this conviction because the Commonwealth failed to prove that he intended to kill the officer. According to Appellant, the evidence only demonstrated that he "was attempting to get away from the [officer], not to harm him, by scaring him and running away." Appellant's Brief at 9.

The record completely belies Appellant's claim. Officer Devlin testified that he was lying in the back of the surveillance van when Appellant "came right up on our vehicle and looked into … the driver's side front window right … on the door." N.T. Trial, 10/14/08, at 11. The officer stated that Appellant "came right up on the door frame" and said, "I see you hiding in there, pussy," and "Oh, you want to bang." ***Id.*** at 12. Then, the officer saw Appellant pull out a gun "and fire[] it point blank into [the] surveillance

vehicle." *Id.* Officer Devlin testified that, "[t]he window blew out and glass fell. I saw his muzzle flash and it was deafening, the sound." *Id.*

Officer Devlin's testimony established that Appellant approached the officer's vehicle, made comments indicating that he saw Officer Devlin crouched inside, and then fired his gun at point blank range into the vehicle. Officer Devlin's death would have been a natural and probable consequence of Appellant's conduct, thus adequately demonstrating that he possessed the intent to kill. *See Jackson*, 955 A.2d at 444 (citation omitted). Consequently, Appellant's challenge to the sufficiency of the evidence to support his attempted murder conviction is meritless.

Next, Appellant contends that, under our Supreme Court's recent decision in *Walker*, he is entitled to a hearing to determine the admissibility of expert testimony regarding the reliability of eyewitness identification. Our Court has discussed the implications of *Walker*, as follows:

> For over twenty years, Pennsylvania case law placed a *per se* ban on expert testimony regarding the reliability of eyewitness identification, holding that such testimony would "intrude upon the jury's basic function of deciding credibility." *See Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176, 1182 (1993); *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 631 (1995). Recently, our Supreme Court in *Walker* reversed course, holding that "the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible in our Commonwealth[.]" *See Walker*, 92 A.3d at 792–93. In so doing, the *Walker* Court joined the trend among state and federal courts to permit testimony regarding the fallibility of eyewitness identification in light of "advances in scientific study ... that eyewitnesses are apt to erroneously identify a person as the perpetrator of a crime when certain factors are present." *Id.* at 782–83.

- 6 -

The Supreme Court indicated that "such expert testimony would be limited to certain cases[,]" and trial courts must exercise their traditional role in determining the admissibility of expert testimony, including pursuant to Rules 401, 403, and 702 of the Pennsylvania Rules of Evidence. *Id.* at 787, 789–91. In particular, the *Walker* Court explained:

> We now allow for the possibility that such expert testimony on the limited issue of eyewitness identification as raised in this appeal may be admissible, at the discretion of the trial court, and assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact. Of course, the question of the admission of expert testimony turns not only on the state of the science proffered and its relevance in a particular case, but on whether the testimony will assist the jury. Trial courts will exercise their traditional role in using their discretion to weigh the admissibility of such expert testimony on a case-by-case basis. It will be up to the trial court to determine when such expert testimony is appropriate. If the trial court finds that the testimony satisfies *Frye*,[2] the inquiry does not end. The admission must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification. We find the defendant must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert's testimony is relevant to the eyewitness identifications under consideration and how it will assist the jury in its evaluation. The proof should establish the presence of factors (e.g., stress or differences in race, as between the eyewitness and the defendant) which may be shown to impair the accuracy of eyewitness identification in aspects which are (or to a degree which is) beyond the common understanding of laypersons.
>
> > [2] The *Frye* test is an evidentiary test, which is used "when a party wishes to introduce novel scientific evidence obtained from the conclusions of an expert scientific witness." *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *see Commonwealth v. Harrell*, 65 A.3d 420, 429 (Pa. Super. 2013).

*Id.* at 792 (footnote added).

***Commonwealth v. Selenski***, 117 A.3d 1283, 1284-85 (Pa. Super 2015).

Here, at trial, Appellant moved to introduce expert testimony regarding the reliability of cross-racial identifications, but the court denied the motion, ruling that such evidence was *per se* inadmissible under the case law in effect at that time.[1] ***See Spence***, 627 A.2d at 1182; ***Simmons***, 662 A.2d at 631. However, ***Walker*** overruled that *per se* ban, and requires the trial court to undertake a case-by-case assessment of whether expert testimony regarding eyewitness identifications is admissible. Because Appellant is currently on direct appeal from his judgment of sentence, ***Walker*** applies retroactively to Appellant's case. ***See Commonwealth v. Cabeza***, 469 A.2d 146, 148 (Pa. 1983) (holding "that where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct

_____

[1] Appellant does not point to where in the record he moved for the admission of this expert testimony. However, neither the Commonwealth nor the trial court indicate that Appellant waived the issue. Indeed, both the Commonwealth and the trial court seem to essentially concede that Appellant moved to introduce such expert testimony, and that the court precluded it. ***See*** TCO at 5; Commonwealth's Brief at 13. Thus, we will consider this issue preserved for our review.

appeal").[2]  Accordingly, as we did in **Selenski**, we are required to "remand this case to the trial court so that it may perform its traditional gatekeeper function with regard to the proposed expert testimony…."[3]  **Selenski**, 117 A.3d at 1285.

In sum, we conclude that Appellant's sufficiency of the evidence claim is meritless; thus, we affirm his judgment of sentence in that respect. However, we remand Appellant's case for the trial court to hold a hearing in accordance with **Walker**, limited to the question of whether expert testimony pertaining to eyewitness identification is admissible in Appellant's case.  Because the trial court may ultimately vacate Appellant's current judgment of sentence and award him a new trial, we decline to address the sentencing challenge Appellant presents herein, without prejudice to his right to reassert that claim on appeal following remand.

_____

[2] The trial court concludes that **Walker** does not apply because that "decision did not become law until 2014, six years after this court's decision on the issue."  TCO at 5.  The court reasons that "[t]he governing law during [] [A]ppellant's trial was that expert eyewitness identification testimony was *per se* inadmissible."  **Id.** (citation omitted).  However, in **Selenski**, the defendant's trial occurred in 2009 - just one year after Appellant's trial - and yet this Court applied the ruling in **Walker** to his direct appeal in 2015.  **See Selenski**, 117 A.3d at 1284-1295.  Accordingly, **Walker** also applies to Appellant's case.

[3] We point out that "the Commonwealth does not oppose a remand for the limited purpose of allowing the trial court to determine whether such testimony would be appropriate in this case."  Commonwealth's Brief at 13.

Judgment of sentence affirmed, in part. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/29/2016