J-A17023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIL WYNDER | : | |
| | : | |
| Appellant | : | No. 1256 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004195-2021

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 23, 2024**

Appellant Jamil Wynder appeals from the judgment of sentence imposed following his convictions for attempted murder, robbery, and related offenses. On appeal, Appellant challenges the trial court's evidentiary ruling and the sufficiency of the evidence.  Additionally, Appellant argues that his convictions for robbery and terroristic threats should have merged.  We affirm.

We adopt the trial court's summary of the facts.  *See* Trial Ct. Op., 9/7/23, at 2-25.  Briefly, on August 13, 2021, Asia Walker drove with her nine-year-old child to Wynnewood Lanes, a bowling alley in Haverford Township.  Appellant is the father of Ms. Walker's child.  The child was attending a birthday party for her half-sister, another child of Appellant's, and planned on spending the rest of the weekend with Appellant and his family. After Ms. Walker's child went into the bowling alley, Appellant and Ms. Walker spoke in the parking lot for over an hour.  Ms. Walker also spoke with Odyssey

Hudson, Appellant's sister, who was also in the parking lot. After Ms. Walker gave Appellant an overnight bag for their child, Appellant became upset. Appellant began recording the audio of their conversation with his cell phone.

In the recording, Appellant repeatedly told Ms. Walker he was going to kill her. Ms. Walker walked away from Appellant and towards the car where her sister was waiting. Appellant took a gun from Ms. Hudson's car and followed Ms. Walker. When Ms. Walker turned around, Appellant pointed the gun at her. Appellant asked Ms. Walker if she was ready to die. Appellant fired once, grazing Ms. Walker's shoulder, and she fell to the ground.

Ms. Walker got up and used her phone to photograph the license plate of Ms. Hudson's vehicle. Appellant ran towards Ms. Walker and tackled her, and both landed on the ground. Appellant struggled with Ms. Walker over the phone. Appellant took Ms. Walker's phone and threw it onto the roof of the bowling alley. Ms. Walker ran to her sister, got her sister's phone and again photographed the license plate of Ms. Hudson's vehicle. Ms. Walker testified that at this time, Appellant opened fire on Ms. Walker for the second time. Appellant then got into Ms. Hudson's vehicle. Appellant told Ms. Hudson to "push it, push it" and she drove away from the bowling alley.

Ms. Walker used her sister's phone to call the police. A police detective found Ms. Walker's phone on the roof of the bowling alley. The police used the photographs Ms. Walker took of the license plate to confirm that Ms. Hudson is the registered owner of that vehicle.

Police officers recovered both live bullets and fired cartridge casings from the parking lot. A detective examined these bullets and casings and determined that they were all .380 caliber. Ms. Hudson owns a Ruger .380 pistol.

Appellant testified that he was trying to scare Ms. Walker into leaving by threatening her and retrieving the gun. Appellant stated that Ms. Walker struggled with him and during the struggle the gun went off. Appellant also explained that he fired two more shots into the air.

At trial, Officer Richard Smith of the Lower Pottsgrove Police Department testified about a separate incident that he investigated on November 17, 2021. Officer Smith explained that Lorenzo Allen, Ms. Hudson's boyfriend, alleged that Appellant had threatened him with a gun. Ms. Hudson showed her handgun to Officer Smith, who identified it as a Ruger .380 pistol.

On September 29, 2022, a jury found Appellant guilty of attempted homicide, robbery, aggravated assault, recklessly endangering another person (REAP), terroristic threats, and possession of a firearm by a prohibited person.[1]

On January 4, 2023, the trial court sentenced Appellant to an aggregate term of twelve and one-half to thirty years' incarceration followed by five years of probation.

---

[1] 18 Pa.C.S. §§ 901, 2502(a); 3701(a)(1)(iii); 2702(a)(1); 2705; 2706(a)(1); and 6105(a)(1), respectively.

Appellant filed a timely post-sentence motion challenging, among other things, the sufficiency of the evidence and the trial court's sentence, which the trial court denied. Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the [trial] court erred in permitting evidence that [Appellant] was alleged to possess a firearm, months subsequent to his arrest and in a different county, where no connection was shown between that firearm and the weapon alleged to have been used in this case, in violation of the 6th and 14th Amendment to the U.S. Constitution, Article 1, §§ 6, 8, and 9 of the Pennsylvania Constitution, Pa.R.E., Rule 404(b)(1) and (b)(3), and [Appellant's] fundamental right to the presumption of innocence at trial[.]

2. Whether the evidence was insufficient as a matter of law to support the conviction for attempted murder and related charges, where the evidence at trial failed to establish that . . . Appellant possessed the specific intent to commit first degree murder and failed to show a substantial step towards committing first degree murder, in violation of 6th and 14th Amendment to the U.S. Constitution, Article 1, §§ 6, 8, and 9 of the Pennsylvania Constitution[.]

3. Whether the [trial] court erred in failing to merge the robbery and terroristic threatening counts for the purposes of sentencing, where [Appellant] was sentenced to serve six . . . to twelve . . . months that he should not have been sentenced to serve if the [trial] court had correctly merged these two . . . offenses.

Appellant's Brief at 5.[2]

_____

[2] We note that in his Rule 1925(b) statement, Appellant raised ten additional issues. *See* Appellant's Rule 1925(b) Statement, 6/21/23, at 2-4 (unpaginated). Appellant has not raised any of these claims in his appellate

*(Footnote Continued Next Page)*

- 4 -

**Evidentiary Rulings**

In his first issue, Appellant argues that the trial court erred in allowing a police officer to testify about a separate incident where Appellant allegedly threatened his sister's boyfriend with a firearm because that was impermissible other bad acts evidence. *Id.* at 12-21. Appellant also claims that the trial court erred by allowing the Commonwealth to present a photograph of another firearm of the same model to that officer as a demonstrative exhibit. *Id.* at 13. Appellant contends that the evidence had no purpose other than to inflame the passions of the jury. *Id.* at 16-18, 21.

Initially, we must determine whether Appellant has preserved his claim for review. It is well settled that "[t]he absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." **Commonwealth v. Rodriguez**, 174 A.3d 1130, 1145 (Pa. Super. 2017) (citation and quotation marks omitted); **see also** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). As this Court has explained, the trial court must be given "an opportunity to correct errors at the time they are made. A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008) (citations omitted and some formatting altered).

---

brief; therefore, Appellant has abandoned these issues on appeal. **See** Pa.R.A.P. 2116(a), 2119(a); **see also Commonwealth v. McGill**, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned claim on appeal).

Further, our Supreme Court has stated that "[t]he rule is well settled that a party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." **Commonwealth v. Cousar**, 928 A.2d 1025, 1041 (Pa. 2007) (citations omitted).

Here, in its Rule 1925(a) opinion, the trial court explained that Appellant waived any argument that the Commonwealth failed to provide him with adequate notice of its intent to present other bad acts evidence because Appellant failed to object to the lack of prior notice. **See** Trial Ct. Op. at 36-37, 39. The trial court further concluded that Appellant's bad acts evidence claims were meritless. **See id.** at 34-39.

Here, the record establishes that Appellant objected to admission of the photograph of a firearm because it was not the same firearm that Officer Smith saw. **See** N.T. Trial, 9/28/22, at 7-8. Additionally, Appellant objected to Officer Smith's testimony about Appellant's alleged threats on the basis of hearsay and Appellant's right to confront witnesses against him. **See id.** at 16-18. However, Appellant did not argue to the trial court that either the photograph or Officer Smith's testimony were inadmissible bad acts evidence. **See id.** at 7-16. Therefore, Appellant's claims are waived, and no relief is due. **See Rodriguez**, 174 A.3d at 1145; **see also Cousar**, 928 A.2d at 1041; Pa.R.A.P. 302(a).

## Sufficiency of Evidence

In his second issue, Appellant challenges the sufficiency of the evidence supporting his conviction for attempted murder. Appellant's Brief at 22-26.

Specifically, Appellant argues that the evidence was insufficient to establish that he possessed the specific intent to kill Ms. Walker. *Id.* Appellant claims that his trial testimony established that he did not have the specific intent to kill. *Id.* at 23. Appellant contends that "his use of words such as 'I'll kill you' . . . was 'proverbial'" and were made during an hour-long argument between him and Ms. Walker. *Id.* at 23-24 (some formatting altered). Appellant further claims that Ms. Walker's actions demonstrated that she was not afraid that Appellant would try to kill her. *Id.* at 24-25.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

This Court has stated:

Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S. § 2502(a). . . . In sum, attempted murder is composed of two primary elements. The *mens rea* element of the offense is specific intent to kill, which is identical to the *mens rea* element of murder in the first degree. The *actus reus* element of the offense is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing.

*Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*) (footnote and some citations omitted and some formatting altered).

"The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (citation omitted). A defendant's contemporaneous statements can establish a specific intent to kill. *See, e.g.*, *Commonwealth v. Vandivner*, 962 A.2d 1170, 1176 (Pa. 2009) (holding that the defendant's statements before and after shooting the victim that he was going to kill her were evidence of his specific intent to kill); *Commonwealth v. Cross*, 331 A.2d 813, 814-15 (Pa. Super. 1974) (explaining that evidence of the defendant's "long standing feud" with the victim and the victim's brother combined with the defendant's statement "this is for your brother" before shooting at the victim established a specific intent to kill). Further, a defendant's subsequent conduct, including flight, is evidence of consciousness of guilt, which can establish that the defendant acted with a specific intent to kill. *See Commonwealth v. Moore*, 937 A.2d 1062, 1067 (Pa. 2007).

Here, the trial court explained:

The record shows on August 13, 2021, Appellant threatened [Ms.] Walker when he stated, "I'm going to kill you." The record shows Appellant admit[ted] to threatening [Ms.] Walker and admit[ted] to firing the gun at [Ms.] Walker. The record shows Appellant made two separate attempts to shoot [Ms. Walker]. The first attempt at shooting [Ms.] Walker resulted in a burn wound to her chest[/shoulder area] and during the second round of shots Appellant attempted to shoot [Ms.] Walker twice. Additionally, the record shows Appellant stated to the police [that] incidents with women "make him want to kill." The record shows audio recordings taken during the criminal episode of Appellant threatening [Ms. Walker's] life, and then shooting at her in two separate and distinct shooting incidents.

In the present case, the jury listened to, reviewed, and fully considered the evidence of record, and concluded Appellant's conviction was supported by abundant evidence. The jury believed the testimony of the Commonwealth's witnesses and determined the evidence required to establish the elements of the crime of attempted murder was sufficient to prove the charge beyond a reasonable doubt, and linked Appellant directly to the August 13, 2021 assault. The jury also listened to Appellant's testimony and considered that he admitted to shooting the gun, how he was enraged at the time of the shooting, and he admitted [in his statement to the police that] this incident and similar incidents "make him want to kill".

Based on the totality of the evidence presented, and all reasonable inferences drawn from the evidence viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable the jury to conclude the Commonwealth proved beyond a reasonable doubt Appellant attempted to murder [Ms. Walker]. This court concluded Appellant's claim[] is contrary to the record and the evidence overwhelmingly is sufficient to support Appellant's conviction for attempted murder and judgment of sentence should be affirmed.

Trial Ct. Op. at 27-28 (some formatting altered).

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for attempted murder. *See Palmer*, 192 A.3d at 89. As noted previously, Appellant threatened to kill Ms. Walker multiple times. *See* N.T. Trial, 9/27/22, at 54-55; N.T. Trial, 9/29/22, at 14, 16, 18; Exhibit C-29 (audio recording from Appellant's phone). Appellant then retrieved a firearm and shot at Ms. Walker in two separate instances. *See* N.T. Trial, 9/27/22, at 58, 64, 85-86, 123, 137; N.T. Trial, 9/29/22, at 12, 25-26. After the shooting, Appellant got into Ms. Hudson's vehicle and told her to "push it" while she was driving away. *See* N.T. Trial, 9/29/22, at 7, 37; Exhibit C-29. Appellant's contemporaneous threats to the victim are sufficient to establish Appellant's specific intent to kill. *See Vandivner*, 962 A.2d at 1176; *Cross*, 331 A.2d at 814-15. Further, Appellant's flight in Ms. Hudson's vehicle is evidence of both his consciousness of guilt and his specific intent to kill. *See Moore*, 937 A.2d at 1067.

Further, to the extent that Appellant argues that Ms. Walker did not seem to be in fear of him, he has not cited any authority that his subjective belief that Ms. Walker was not afraid of him negates his specific intent to kill. *Cf. Commonwealth v. Hudgens*, 582 A.2d 1352, 1357-59 (Pa. Super. 1990) (holding that "[n]either the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element" of terroristic threats, and the evidence was sufficient to establish the defendant's

intent to terrorize the victim (citation omitted)). Therefore, in light of the totality of all the evidence presented by the Commonwealth, as verdict winner, we agree with the trial court that there was sufficient evidence to sustain Appellant's conviction for attempted murder and Appellant is not entitled to relief on this claim.[3]

**Merger**

In his final issue, Appellant argues that the trial court imposed an illegal sentence because his terroristic threats conviction should have merged with his robbery conviction for sentencing purposes. Appellant's Brief at 27-30. Appellant contends that his convictions arose from "an ongoing, uninterrupted event, and any threats were made in the course of the same incident in which [Appellant] is alleged to have forcibly taken and thrown [Ms. Walker's] cell phone." *Id.* at 29.

---

[3] We note that Appellant also argues that the evidence was insufficient to establish that he took a substantial step towards killing Ms. Walker. **See** Appellant's Brief at 22, 26. However, the only element of attempted murder that Appellant identified in his Rule 1925(b) statement was the specific intent to kill. **See** Appellant's Rule 1925(b) Statement, 6/21/23, at 2 (unpaginated). Therefore, to the extent he challenges a separate element of attempted murder, that claim is waived. **See Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (reiterating that an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient and noting that "[s]uch specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt" (citation omitted)). Even if not waived, when viewed in the light most favorable to the Commonwealth, the evidence established that Appellant took substantial steps towards killing Ms. Walker by firing a gun at her multiple times.

When reviewing the legality of a sentence, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Tighe***, 184 A.3d 560, 584 (Pa. Super. 2018) (citations omitted).

Section 9765 of the Sentencing Code provides as follows:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

This Court has explained, "[t]he statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1030 (Pa. Super. 2016) (citations omitted); ***see also Commonwealth v. Williams***, 958 A.2d 522, 527 (Pa. Super. 2008) (explaining that when the offenses stem from separate criminal acts, merger does not apply).

When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. Th[e] issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, [and if so,] then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

***Commonwealth v. Leaner***, 202 A.3d 749, 785 (Pa. Super. 2019) (citation omitted).

Here, the trial court explained:

The record shows Appellant's actions against [Ms. Walker] were a series of crimes that occurred close in time but were distinctly separate. Appellant threatened [Ms.] Walker independent of the robbery. The record shows that Appellant threatened [Ms.] Walker before the robbery, when he said, "I'm going to kill you." Appellant also threatened [Ms.] Walker after the robbery by firing a firearm in her direction. The robbery consisted of the Appellant separately threatening [Ms. Walker] with a gun, and then stealing her phone. This court concluded the robbery did not arise from the same criminal act as the terroristic threats, and the sentences should not have merged.

Trial Ct. Op. at 55.

Following our review of the record, we agree with the trial court's conclusion that Appellant's convictions for robbery and terroristic threats do not merge for sentencing purposes. Here, the record establishes that Appellant threatened to kill Ms. Walker multiple times before the first shooting. *See* N.T. Trial, 9/27/22, at 54-55; N.T. Trial, 9/29/22, at 14, 16, 18; Exhibit C-29. After Appellant fired the first shot, he tackled Ms. Walker to the ground, forcibly took Ms. Walker's phone, and threw it onto the roof of the bowling alley. *See* N.T. Trial, 9/27/22, at 59-64, 71, 111-12; N.T. Trial, 9/29/22, at 12, 46-47. Appellant's threats to Ms. Walker before the shooting were sufficient to establish the elements of terroristic threats and Appellant then committed multiple acts which went beyond those elements. *See Leaner*, 202 A.3d at 785. Therefore, Appellant's convictions for robbery and terroristic threats arose from separate criminal acts. For these reasons, the trial court did not err in imposing separate sentences for robbery and terroristic threats

and Appellant is not entitled to relief on this claim. **See Martinez**, 153 A.3d

at 1030; **Williams**, 958 A.2d at 527. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2024