J-S47031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE M. LEACH | : | |
| | : | |
| Appellant | : | No. 884 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 11, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002852-2022

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:           **FILED MARCH 17, 2025**

Tyrone M. Leach ("Leach") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of first-degree murder, attempted murder, carrying a firearm without a license, carrying a firearm on Philadelphia public streets, and possession of an instrument of crime.[1]  On appeal, Leach challenges the sufficiency of the evidence to support his first-degree murder and attempted murder convictions, the weight of the evidence to support his first-degree murder and attempted murder convictions, and the discretionary aspects of his sentence.  After review, we affirm.

_____

[1] 18 Pa.C.S. §§ 2502(a), 901, 6106, 6108, 907.

In the early morning hours of January 10, 2022, Leach met his friend Al'Lashay Reeder ("Reeder") outside the Frankford Convenience Store, located at 1538 Pratt Street in Philadelphia. Approximately thirty minutes later, a man known as "Leek" approached Leach, Reeder, and a few others outside the convenience store. As Leek and Reeder greeted each other, Leach reached into his jacket pocket and pulled out a handgun. At this point, Leek's hands were still at his waist. Leach fired his gun in Leek's direction, but instead shot Reeder in the neck. Reeder died from her injuries a few days later.

Police arrested Leach, and the Commonwealth charged him with numerous crimes. The case proceeded to a jury trial, after which the jury convicted Leach of the crimes stated above. Subsequently, the trial court imposed the mandatory sentence of life imprisonment for first-degree murder, a consecutive aggregate sentence of five to seventeen years for his other offenses, and an additional consecutive sentence of three to six months of incarceration for contempt of court that occurred during the sentencing hearing. Leach filed a post-sentence motion, raising both discretionary sentencing and weight of the evidence claims. The trial court denied the motion. This timely appeal followed.

Leach raises the following three issues for our review:

1.  Whether the verdict was against the sufficiency of the evidence as it relates to murder of the first degree and criminal attempted murder, no specific intent and no transferred intent[?]

2.      Whether the verdict was against the weight of the evidence as it applies to murder of the first degree and criminal attempted murder[?]

3.      Whether [Leach] should not have a life without the possibility of parole sentence because the verdict of murder of the first degree is contrary to the evidence and should be reversed[?]

Leach's Brief at 5 (unnecessary capitalization omitted).

## **Sufficiency of the Evidence**

First, Leach argues that the evidence was insufficient to support his convictions for first-degree murder (under a transferred intent theory) and attempted murder, because the evidence instead supported a finding that he acted in self-defense. *Id.* at 14, 21. Leach asserts that since the Commonwealth did not meet its burden of disproving his claim of self-defense, there was insufficient evidence for the jury to convict him for first-degree murder and attempted murder. *Id.* at 21. Because the shooting was in self-defense, then he had no specific intent to kill Reeder. *Id.* Leach highlights the evidence presented of past animosity and violence with Leek and argues that the "happenstance" nature of the encounter, in light of that prior relationship, supported his claim of self-defense. *Id.* at 18, 21.

Our standard of review for challenges to the sufficiency of the evidence is well settled:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact

finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted). The factfinder "is free to believe all, part, or none of the evidence presented." *Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023) (quotation marks and citation omitted). A challenge to the sufficiency of the evidence presents a question of law; thus, our standard of review is de novo. *Commonwealth v. Murray*, 83 A.3d 137, 151 (Pa. 2013).

First-degree murder requires an unlawful killing of a human being, for which the defendant was responsible, and for which the defendant had malice and a specific intent to kill. *See* 18 Pa.C.S. § 2502(a); *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). A factfinder can infer specific intent to kill from the defendant's use of a deadly weapon on a vital body part. *Houser*, 18 A.3d at 1133-34. Furthermore, specific intent to kill one person can be transferred to another person who was not the intended victim. *See* 18 Pa.C.S. § 303(b)(1).

"A person commits attempt, when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id.* § 901(a). "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act."

*Commonwealth v. Jackson*, 955 A.2d 441, 444 (citation and quotation marks omitted).

A claim of self-defense requires evidence of the following three elements:

> (a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat. Although the defendant has no burden to prove self-defense, ... before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. The Commonwealth sustains that burden of negation if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Williams*, 176 A.3d 298, 309 (Pa. Super. 2017) (citations and quotation marks omitted).

The record reflects that at trial, the jury heard evidence that Leach and Leek had a history of violence. *See* N.T., 1/10/2024, at 58-71. Leek allegedly shot Leach in 2019, *id.* at 58, 62, and as a result, Leach feared for his life outside the convenience store, *id.* at 64, 66, 68. The Commonwealth, however, introduced video surveillance footage from outside the convenience store, which captured the lead-up to the shooting, the shooting itself, and the

events that occurred immediately afterward. *See* N.T., 1/9/2024, at 96-111. Detective Thorsten Lucke of the Philadelphia Police Department compiled the footage and provided context as the video was played for the jury. *Id.* at 87-96. That footage shows Leek arrive outside the convenience store, at which point he begins talking to Reeder. *Id.* at 108. It also shows Leach reach into his jacket and pull out a handgun while Leek's hands are still at his side. *Id.* Leach fires the gun at Leek, but accidentally shoots Reeder in the neck. *Id.* At that point, everyone outside the convenience store scatters, with Leach and Leek running in opposite directions. *Id.* A separate video camera captured Leek as he fled from the scene, and shows him holding a handgun. *Id.* at 119-20. After the shooting, Reeder died from her injuries. *Id.* at 133.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to disprove Leach's claim that he acted in self-defense. Based upon the video footage,[2] the jury was free to disbelieve that the atmosphere outside the convenience store and the history between Leach and Leek led Leach to reasonably perceive an imminent threat of death or serious bodily injury. Although Leek may have possessed a handgun at the time of the shooting, he did not reach for or handle it at the time of the shooting. Thus, the evidence supported a finding that he did not reasonably

_____

[2] Our independent review of the video footage confirms that the description of the events in the record is accurate.

believe he was in imminent danger of death or serious bodily injury. *See Williams*, 176 A.3d at 311.

Further, the evidence was sufficient to support the attempted murder conviction, as Leach pulled out his gun and shot in Leek's direction. Because Leach took a substantial step towards intentionally killing Leek by drawing his gun and firing at Leek, the evidence was sufficient to support his attempted murder conviction. *See Jackson*, 955 A.2d at 445 (concluding evidence was sufficient to support appellant's attempted murder conviction where appellant pointed his gun at victim).

Finally, the evidence was sufficient to support Leach's first-degree murder conviction. Leach fired his gun in Leek's direction and hit Reeder in the neck. *See Commonwealth v. Randolph*, 873 A.2d 1277, 1281 (Pa. 2005) ("The use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill.") (citation omitted). Reeder's status as an innocent bystander was immaterial under the doctrine of transferred intent. *See Commonwealth v. Padilla*, 80 A.3d 1238, 1247 (Pa. 2013) (finding evidence sufficient to support specific intent to kill under transferred intent doctrine where appellant fired his gun into a crowd of people and killed a bystander who was not the specific target). Thus, the evidence was sufficient to support the attempted murder and first-degree murder convictions.

## Weight of the Evidence

Second, Leach claims that the verdict for first-degree murder was against the weight of the evidence. *See* Leach's Brief at 22, 23. He argues that the verdict was "shocking" in light of the chance encounter with Leek. *Id.* at 23. Leach also claims that a slow-motion viewing of the video establishes that he was in "fear of imminent death or serious bodily injury." *Id.*

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)). This Court evaluates whether the trial judge's decision to deny a challenge to the weight of the evidence was an abuse of discretion, not whether the verdict was in fact against the weight of the evidence. *Widmer*, 744 A.2d at 753.

Here, the trial court found Leach's own testimony that he acted in self-defense to be inconsistent and self-serving. *See* Trial Court Opinion, 6/3/2024 at 7. The trial court therefore rejected Leach's weight challenge, concluding that the evidence supported the verdict. *Id.* at 8.

Our review of the record supports the trial court's finding that the evidence was not consistent with a finding of self-defense, including statements made by Leach himself. For example, in an interview with Detective McKenna in the days following the shooting, Leach failed to even mention the fact that Leek shot him in 2019. *See* N.T., 1/10/2024, at 64-67, 72-91. Further, the video footage shows Leach proactively drawing his weapon, without any corresponding threat from Leek. "An appellate court cannot substitute its judgment for that of the finder of fact." ***Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted).

Given the ample evidence of guilt, the trial court's explanation renders any challenge to its exercise of discretion without merit. ***See Commonwealth v. Williams***, 255 A.3d 565, 580-81 (Pa. 2021) (holding that the trial court did not abuse its discretion in denying defendant's weight claim for first-degree murder where video surveillance captured defendant shooting the victim); ***Commonwealth v. Gilliam***, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor).

### Discretionary Aspects of Sentencing

In his final issue, Leach argues that the trial court's imposition of a consecutive sentence of five to seventeen years for his firearms convictions and possessing an instrument of crime was an abuse of discretion. ***See***

Leach's Brief at 24. Leach challenges the discretionary aspects of his sentence. *See Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa. Super. 2010).

As an initial matter, Leach waived his discretionary aspects of sentencing challenge. Leach's argument in his statement of questions that he "should not have a Life Without the Possibility of Parole sentence because the verdict of Murder Of The First Degree is contrary to the evidence[,]" is not the issue he raises in the argument section of his brief. *Compare* Leach's Brief at 5, *with id.* at 24 ("The 5-17 years consecutive to life without the possibility of parole is unnecessary."). He likewise failed to raise the issue he now advances on appeal in either his Rule 1925(b) Statement, at sentencing, or in his post-sentence motion. *See* Leach's 1925(b) Statement, 3/25/2024, at 2-3; N.T., 1/11/2024, at 7-36; Leach's Post-Sentence Motions, 1/19/2024, at 1-3. For each of these reasons, his sentencing claim presented on appeal is waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Commonwealth v. Anderson*, 224 A.3d 40, 48 (Pa. Super. 2019) ("[U]nless issue challenging discretionary aspects of a sentence is raised in a post-sentence motion or during the sentencing proceeding, it is waived[.]") (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/17/2025